Brett DAVIS, et al., Plaintiffs,

v.

## CITY OF GREENSBORO, NC, Defendant.

David Morgan, et al., Plaintiffs,

v.

City of Greensboro, NC, Defendant.

1:12–CV–888
1:12–CV–1110

United States District Court,
M.D. North Carolina.

Signed July 7, 2015

---

William L. Hill, James Demarest Secor, III, Frazier Hill & Fury, RLLP, Greensboro, NC, for Plaintiffs.

Kenneth Kyre, Jr., Danielle N. Godfrey, Pinto Coates Kyre & Bowers, PLLC, Greensboro, NC, for Defendant.

### ORDER

CATHERINE C. EAGLES, UNITED STATES DISTRICT JUDGE

Before the Court are cross-motions for summary judgment filed in two lawsuits brought by police officers against the City of Greensboro raising issues related to compensation and benefits. This Order addresses the officers' claims that the City should have included certain off-duty wages in calculating their compensation for purposes of making pension contribu-

tions on their behalf. Because these off-duty wages were earned for work done outside the plaintiffs' City employment, they do not fall within the statutory definition of compensation. The Court will grant the City's motions in both cases as to all claims related to off-duty wages.

### BACKGROUND [1]

The City allows police officers to work for outside entities under limited circumstances. The outside entities go through the City when they want to hire off-duty police officers. Some entities hire off-duty officers on a regular basis, and other entities hire on an occasional or one-time basis. While working off-duty, officers use their City patrol cars, carry their City-issued firearms and communications equipment, and, with very limited exceptions, wear their City uniforms; they must comply with the same policies and procedures applicable when they work on-duty. The outside entities determine the work hours, the location of work, and the duties of the officers. Until the City changed the program in April 2013, the outside entity paid the City for the officer's time plus an administrative fee, and the City paid the officer. The City does not consider these "off-duty wages" to be "compensation" as defined by the statute establishing the Local Governmental Employees Retirement System ("LGERS") and does not take them into account when calculating LGERS contributions.[2]

LGERS is a pension plan for local government employees established by state

---

1. All citations to the record in this Order are to the electronic docket in Case Number 1:12–CV–888, unless otherwise indicated.

2. The evidence reflects that the City generally refers to any work done outside an officer's regular duty hours as "off-duty," but that it treats as pensionable such work done at City-sponsored events and City venues and certain

narcotics and "task force" assignments that are paid for through grants. (*See, e.g.,* Doc. 67–2 at 26–29; Doc. 67–3 at 19.) As used in this Order, "off-duty wages" refers only to officers' work done for outside entities unrelated to City-sponsored events, City venues, or grant-funded narcotics and task force assignments.

statute. *See* N.C. Gen.Stat. § 128–22. While local governments are not required to participate, *see* Diane M. Juffras, *Employee Benefits Law for North Carolina Local Government Employers* 23 (2009), many do, including the City of Greensboro.

"LGERS is a defined-benefit retirement plan," meaning that "the employer and employee make contributions to the plan at monthly or yearly intervals and after retiring, the employee receives a fixed sum of money each month." *Id.* Contributions are calculated based on an employee's "compensation," *see* N.C. Gen.Stat. § 128–30(b), (d), which is defined in relevant part as "all salaries and wages ... derived from public funds which are earned by a member of the [LGERS] for service as an employee in the unit of the [LGERS] for which he is performing full-time work." *Id.* § 128–21(7a)a.

## ANALYSIS

The evidence is undisputed that when an officer is working off-duty, the officer is hired by and working for an outside entity, not the City. The outside entity determines the hours, the location of work, and the duties of the officers. Therefore, the off-duty wages are not "earned ... for service as an employee" of the City. *See id.* Because these off-duty wages do not meet the statutory definition of compensation, the City is not required to consider them when calculating LGERS contributions.

The plaintiffs contend that the off-duty wages were "earned ... for service as an employee" of the City because officers used their City-issued uniforms and patrol cars while working off-duty and because the City maintained substantial control over off-duty work by requiring officers to follow all City policies and procedures while working off-duty. (*See* Doc. 74 at 32–35; *see also* Doc. 79 at 32–34.) The LGERS statute says nothing about control over an officer's work and thus does not support the plaintiffs' interpretation. Moreover, the plaintiffs have cited no authority for these arguments. Requiring an off-duty officer who works in uniform to comply with policies governing all law enforcement officers, such as not working as private investigators, not serving alcoholic beverages, and not enforcing private rules counter to law, does not mean the officer is earning wages for service as a City employee.

The plaintiffs make a similar argument that the off-duty wages were "earned ... for service as an employee" of the City because an officer injured while working off-duty could be eligible to receive workers' compensation benefits from the City. The plaintiffs' evidence reflects that an off-duty officer could possibly receive workers' compensation benefits from the City if the officer is injured while "actively engaged in enforcing the law," (Doc. 67–2 at 18–19), or "in the process of effectuating an arrest." (Doc. 67–3 at 16; *see also* Doc. 68–7 at 5.) The fact that there is a possibility of workers' compensation coverage in some circumstances does not mean that all officers are serving as City employees while performing all off-duty work.

The plaintiffs also contend that the off-duty wages were "earned ... for service as an employee" of the City because officers were, at times, dispatched to do on-duty work while they were working off-duty. (*See* Doc. 74 at 32–35; *see also* Doc. 79 at 32–34.) The evidence is undisputed that police officers can be called "on-duty" at any time, whether they are working "off-duty" or not working at all. The fact that an off-duty officer can be called on-duty, just like officers who are not working at all, does not mean that all off-duty wages should be treated as compensation by the City. Nor does the fact that officers working off-duty respond to on-duty calls

with some regularity,[3] whereas officers who are not working at all are rarely called on-duty, change the analysis; the fact remains that an officer working off-duty for a third party is not serving as an employee of the City. If an officer was in fact called on-duty while working off-duty, the officer may have an argument that the specific wages paid after he went on-duty should be treated as compensation for LGERS purposes. Here, however, the plaintiffs have offered no such evidence or argument as to any specific plaintiff.

Because the off-duty wages were not "earned ... for service as an employee" of the City, the City is not required to include them when calculating LGERS contributions. The Court will grant the City's motions as to all claims related to off-duty wages.

As an additional basis for summary judgment, the City contends that the off-duty payments it received from outside entities "flowed through" the City and were distributed to officers as off-duty wages such that the off-duty wages were not "derived from public funds" as contemplated by the statutory definition of compensation. (*See* Doc. 78 at 2425); *see also* N.C. Gen.Stat. § 128–21(7a)a. The plaintiffs contend that the evidence shows that the City commingled off-duty payments received from outside entities with other City revenue and that the City used its own money to pay officers off-duty wages when an outside entity defaulted or became delinquent. (*See* Doc. 74 at 34–35;

*see also* Doc. 79 at 34.) The factual record as explained by the parties is not clear enough for the Court to grant summary judgment on this alternative basis.[4]

In each complaint, the plaintiffs allege that the City also underpaid contributions related to off-duty wages to the Supplemental Retirement Income Plan for Local Governmental Law Enforcement Officers ("SRP"). In their briefs, the plaintiffs did not discuss their SRP claims. The Court assumes that its discussion of the off-duty wages claims in this Order addresses and resolves the plaintiffs' off-duty claims under both the LGERS and the SRP.

It is **ORDERED** that the City's motions for summary judgment in Case Numbers 1:12–CV–888, (Doc. 75), and 1:12–CV–1110, (Doc. 54), are **GRANTED** as to all claims related to off-duty wages, and the plaintiffs' motions in Case Numbers 1:12–CV–888, (Doc. 67), and 1:12–CV–1110, (Doc. 50), are **DENIED** as to the same claims. The Court will enter judgment once it resolves all aspects of the summary judgment motions or as soon as is otherwise appropriate.

---

3. The City has presented evidence raising some question as to how often and under what circumstances this happens, but the Court is required to accept the plaintiffs' evidence for summary judgment purposes.

4. If the facts are as the City presents them in its briefs, (*see* Doc. 78 at 24–25; *see also* Doc. 80 at 22–23), the Court would likely agree with the City's conclusion. The mere fact

that the City placed payments received from outside entities and other City revenue in the same "general fund" does not, by itself, mean that officers received off-duty wages that were "derived from public funds," if in fact the off-duty payment system worked completely on a "flow-through" basis. However, the City's citations to the record do not clearly establish that this is so.